# No. 16-3273

————————

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

———————

M. GUY HARDY, individually and as a participant in the Local 95 Insurance Trust Fund and the
Local 95 Pension Fund, and on behalf of all other persons who are, will be, or have at any time
since 1/1/80 been, participants or beneficiaries in the, JOSEPH HARDY
Plaintiffs-Appellees,
HARRY J. DIDUCK, HARVEY L. SHERROD
Plaintiffs,
v.
EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES
Defendant-Cross-Claimant-Appellee,
WILLIAM KASZYCKI, TRUMP-EQUITABLE FIFTH AVENUE COMPANY, TRUMP ORGANIZATION,
HOUSE WRECKERS UNION LOCAL 95 PENSION FUND, TRUSTEES OF THE HOUSE WRECKERS UNION
LOCAL 95 INSURANCE TRUST FUND, KASZYCKI & SONS CONTRACTORS, INC., DONALD J. TRUMP,
DBA THE TRUMP ORGANIZATION, JOHN SENYSHYN,
Defendants-Cross-Defendants-Cross-Claimants-Appellees,
v.
TIME INC., THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS,
Intervenors-Appellants.

———————

On Appeal from the United States District Court
for the Southern District of New York

_____

## BRIEF AND SPECIAL APPENDIX FOR INTERVENORS-APPELLANTS

_____

Katie Townsend, Esq.
Bruce D. Brown, Esq.
THE REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th Street NW, Ste. 1250
Washington, D.C. 20005
(202) 795-9300

Andrew B. Lachow, Esq.
TIME INC.
225 Liberty Street
New York, NY 10281
(212) 467-8308

*Attorneys for Intervenors-Appellants*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Intervenors-Appellants state as follows: The Reporters Committee for Freedom of the Press is an unincorporated association of reporters and editors with no parent corporation and no stock. Time Inc. is a publicly traded corporation. No publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ i

INTRODUCTION AND SUMMARY OF ARGUMENT ....................................... 1

JURISDICTIONAL STATEMENT ...................................................... 4

STATEMENT OF ISSUES ............................................................. 4

STATEMENT OF THE CASE ........................................................... 5

   I.   The *Hardy* litigation. ................................................ 5

   II.  Appellants' motion to unseal. ........................................ 7

   III.  The district court's order. .......................................... 10

ARGUMENT ........................................................................ 11

   I.   Standard of Review .................................................. 11

   II.  Judicial documents in civil cases are presumptively open to the public under common law and the First Amendment......................................... 12

     A.   Public access to judicial documents is integral to our system of government; the public's interest in access is heightened in cases involving public officials and candidates for public office...................... 12

     B.   Both common law and the First Amendment guarantee the public a presumptive right to access judicial documents in civil proceedings. ...... 14

   III.  Both the common law and First Amendment presumptions of access apply to the sealed district court records in *Hardy*.................................... 16

     A.   The sealed settlement-related records are "judicial documents" to which a strong common law right of access applies. ........................... 16

     B.   The First Amendment also guarantees the public a powerful presumptive right to access the sealed settlement-related documents.......................... 24

IV.   The district court applied incorrect legal standards both when it originally sealed the settlement-related documents and when it denied Appellants' motion to unseal. ..................................................................... 26

V.   Under the applicable common law and First Amendment standards, properly applied, Appellants' motion to unseal should be granted ........................... 32

   A.   There is no countervailing interest, let alone a compelling one, that overcomes the public's rights to access the settlement-related records. ... 32

   B.   The public has a particularly powerful interest in access to the sealed judicial documents at issue, which were filed in a class action lawsuit to which the now President-elect was a party. ............................................ 34

CONCLUSION ................................................................... 38

CERTIFICATE OF COMPLIANCE ...................................... 39

# TABLE OF AUTHORITIES

## Cases

*ABC, Inc. v. Stewart*,
   360 F.3d 90 (2d Cir. 2004) ................................................................. 4

*Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*,
   800 F.2d 339 (3d Cir. 1986) ................................................. 25, 26, 33

*Bernstein v. Bernstein Litowitz Berger & Grossman LLP*,
   No. 14-cv-6867 (VEC), 2016 WL 1071107 (S.D.N.Y. Jan. 12, 2015) .............. 33

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
   814 F.3d 132 (2d Cir. 2016) ................................................. 11, 15, 34

*Brown v. Advantage Eng'g, Inc.*,
   960 F.2d 1013 (11th Cir. 1992) ........................................................ 21

*Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*,
   178 F.3d 943 (7th Cir. 1999) ........................................................... 14

*Cohen v. Beneficial Indus. Loan Corp.*,
   337 U.S. 541 (1949) ...................................................................... 4

*Craig v. Harney*,
   331 U.S. 367 (1947) ..................................................................... 13

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
   774 F. Supp. 802 (S.D.N.Y. 1991) ................................................... 6, 19

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
   874 F.2d 912 (2d Cir. 1989) ........................................................... 5, 6

*Doe v. Pub. Citizen*,
   749 F.3d 246 (4th Cir. 2014) ................................................. 13, 25, 35

*EEOC v. Erection Co., Inc.*,
   900 F.2d 168 (9th Cir. 1990) .......................................................... 35

*Fed. Deposit Ins. Corp. v. Ernst & Ernst*,
   677 F.2d 230 (2d Cir. 1982) ........................................................... 29

i

*Ferrand v. Lynonnais*,
  106 F. Supp. 3d 452 (S.D.N.Y. 2015) ............................................................ 17

*FTC v. Standard Fin. Mgmt. Corp.*,
  830 F.2d 404 (1st Cir. 1987) .................................................... 13, 18, 35

*Gambale v. Deutsche Bank AG*,
  377 F.3d 133 (2004) ............................................................ 22, 23

*Geltzer v. Andersen Worldwide, S.C.*, No. 05 Civ. 3339 (GEL),
  2007 WL 273526 (S.D.N.Y. Jan. 30, 2007) ........................................ 26

*Hartford Courant Co. v. Pellegrino*,
  380 F.3d 83 (2d Cir. 2004) ........................................................ 16, 24

*Herrnreiter v. Chi. Hous. Auth.*,
  281 F.3d 634 (7th Cir. 2002) ...................................................... 25

*In re N.Y. Times Co.*,
  828 F.2d 110 (2d Cir. 1987) ...................................................... 31

*In re NBC, Inc.*,
  635 F.2d 945 (2d Cir. 1980) .......................................... 14, 34, 35, 38

*In re NBC, Inc.*,
  653 F.2d 609 (D.C. Cir. 1981) .................................................... 35

*In re Sept. 11 Litig.*,
  723 F. Supp. 2d 526 (S.D.N.Y. 2010) ............................ 18, 23, 26, 33

*In re United States*,
  707 F.3d 283 (4th Cir. 2013) .................................................. 17, 25

*Janus Films, Inc. v. Miller*,
  801 F.2d 578 (2d Cir. 1986) ...................................................... 19

*Joo v. Kitchen Table, Inc.*,
  763 F. Supp. 2d 643 (S.D.N.Y. 2011) ............................................ 20

*Lugosch v. Pyramid Co. of Onondaga*,
  435 F.3d 110 (2d Cir. 2006) .............................................*passim*

*Martindell v. Int'l Tel. & Tel. Corp.*,
  594 F.2d 291 (2d Cir. 1979) ....................................................... 28, 29, 30

*N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*,
  684 F.3d 286 (2d Cir. 2012) ........................................................ 13, 14

*Newsday LLC v. Cty. of Nassau*,
  730 F.3d 156 (2d Cir. 2013) ........................................................ *passim*

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978) ........................................................................ 13

*Palmieri v. New York*,
  779 F.2d 861 (2d Cir. 1985) ......................................................... 29

*Press-Enter. Co. v. Superior Court*,
  464 U.S. 501, 510 (1984) .............................................................. 31

*Press-Enter. Co. v. Superior Court*,
  478 U.S. 1 (1986) ................................................................. 16, 25, 30

*Richmond Newspapers, Inc. v. Virginia*,
  488 U.S. 555 (1980) ................................................................. 13, 14

*Romero v. Drummond Co., Inc.*,
  480 F.3d 1234 (11th Cir. 2007) ................................................... 35

*SEC v. TheStreet.Com*,
  273 F.3d 222 (2d Cir. 2001) ................................................... 29, 30

*SEC v. Van Waeyenberghe*,
  990 F.2d 845 (5th Cir. 1993) ................................................... 22, 25

*Smith v. United States Dist. Court for S. Dist.*,
  956 F.2d 647 (7th Cir. 1992) ................................................... 14, 35

*Union Oil Co. of Cal. v. Leavell*,
  220 F.3d 562 (7th Cir. 2000) ....................................................... 24

*United States v. Alcantara*,
  396 F.3d 189 (2d Cir. 2005) ......................................................... 31

*United States v. Amodeo,*
    44 F.3d 141 (2d. Cir. 1995) ...................................................................*passim*

*United States v. Amodeo,*
    71 F.3d 1044 (2d Cir. 1995) ...................................................................*passim*

*United States v. Beckham,*
    789 F.2d 401 (6th Cir.1986) ....................................................... 14, 35

*United States v. Criden,*
    648 F.2d 814 (3d Cir. 1981) ................................................................... 35

*United States v. Doe,*
    63 F.3d 121 (2d Cir. 1995) .................................................................... 11

*United States v. Erie Cty.,*
    763 F.3d 235 (2d Cir. 2014) ............................................... 4, 12, 15

*United States v. Glens Falls Newspapers, Inc.,*
    160 F.3d 853 (2d Cir. 1998) .........................................................21, 22, 23

*United States v. Haller,*
    837 F.2d 84 (2d Cir. 1988) .................................................................... 31

*United States v. Mentzos,*
    462 F.3d 830 (8th Cir. 2006) ................................................................ 24

*Wolinsky v. Scholastic Inc.,*
    900 F. Supp. 2d 332 (S.D.N.Y. 2012) ............................................... 20

## Rules

Fed. R. Civ. P. 23(e) ................................................................ 8, 19, 20, 26

Fed. R. Civ. P. 26(c) ............................................................. 2, 27, 28, 30

## Other Authorities

Andy J. Semotiuk, *What Trump's Presidency Means for Illegal Immigrants And Immigration To The U.S.,* Forbes (Nov. 10, 2016), http://bit.ly/2fWaGvW ....... 37

Donald J. Trump for President, Immigration,
    https://www.donaldjtrump.com/policies/immigration
    (last visited Nov. 17, 2016) ................................................................ 36

John Kelly & Nick Penzenstadler, *Trump's courtroom baggage follows him to White House*, USA Today (Nov. 9, 2016), https://perma.cc/U36R-CQJC ......... 36

Linda Qiu & Riley Snyder, *Hillary Clinton correctly claims that Trump Tower was in part built by undocumented workers*, PolitiFact (Oct. 20, 2016), at https://perma.cc/WZ95-38MW ......................................................... 37

Nick Penzenstadler & Susan Page, *Exclusive:  Trump's 3,500 lawsuits unprecedented for a presidential nominee*, USA Today (June 2, 2016), at https://perma.cc/925W-SYFM ......................................................... 36

*Transcript of the Republican Presidential Debate in Houston*, N.Y. Times (Feb. 25, 2016), http://nyti.ms/1Lhjg6S ................................................... 37

## INTRODUCTION AND SUMMARY OF ARGUMENT

This appeal arises from the district court's denial of a motion brought by Time Inc. ("Time") and the Reporters Committee for Freedom of the Press (the "Reporters Committee") (collectively, "Appellants") to unseal certain judicial documents. The sealed court records at issue—which include two district court orders, as well as a transcript filed with the district court—were filed in connection with the judicially approved settlement of a class action lawsuit to which the now President-elect of the United States, Donald J. Trump, was a party.

The sealed court records in *Hardy, et al. v. Kaszycki & Sons Contractors, Inc. et al.* ("*Hardy*") are judicial documents that the press and the public have a strong presumptive right to access under both common law and the First Amendment. *See United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*"); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006). Accordingly, they may remain under seal only if—and only to the extent that—shielding them from public view is necessary to preserve "higher values." *Lugosch*, 435 F.3d at 124. Here, the district court failed to apply this correct legal standard, both at the time it originally sealed these judicial documents, and in response to Appellants' motion to unseal them.

Notwithstanding the fact that the judicial documents at issue include orders of the district court and a transcript filed by the parties in connection with

obtaining the district court's approval of a settlement, the district court erroneously treated them as if they were merely unfiled discovery materials exchanged between civil litigants. The district court initially sealed the records in their entirety upon a finding of "good cause," *see* App. at 41, a standard far lower than what the common law and First Amendment demand, *see Lugosch*, 435 F.3d at 124, and it made no on-the-record factual findings in support of its determination.

Thereafter, in denying Appellants' motion to unseal those filings, the district court again ignored the constitutional and common law presumptions in favor of public access to judicial documents. It concluded that, in order to obtain access to the sealed settlement-related records, Time and the Reporters Committee must demonstrate extraordinary circumstances, a compelling need, or that sealing was improvidently granted in the first instance. App. at 41–42. This standard, drawn from inapposite precedent of this Court addressing requests to modify protective orders governing unfiled discovery materials entered pursuant to Rule 26(c) of the Federal Rules of Civil Procedure,[1] is inapplicable to judicial documents like the settlement-related court records at issue here, to which the First Amendment and common law rights of access attach. For this reason alone, the district court's order denying Appellants' motion to unseal must be reversed.

---

[1] Unless otherwise stated, all references herein to the "Rules" are to the Federal Rules of Civil Procedure.

Under the correct legal standards, properly applied, there is no question that the judicial documents at issue should be unsealed. The presumption of access to judicial orders and documents submitted to the district court in order to seek its approval of a class action settlement is to be accorded great weight. *See Amodeo II*, 71 F.3d at 1049–50. And at no point have Appellees Mr. Trump or The Trump Organization, Inc. (hereinafter, "The Trump Organization")—the only parties to the *Hardy* litigation to object to unsealing—demonstrated a countervailing interest that would be served by continuing to shield these judicial documents from public view, let alone a compelling interest of the kind that must be shown to overcome the public's constitutional right of access. *See Lugosch*, 435 F.3d at 124.

Moreover, as Appellants argued before the district court, the public's interest in access is exceptionally powerful in this case. The sealed records relate to the judicially approved settlement of claims against President-elect Trump and businesses owned by or affiliated with him concerning the employment of undocumented, non-union workers in connection with the building of Trump Tower—matters of substantial public concern. The district court, below, gave unduly short shrift to the public's heightened interest, *see* App. at 41, and for that reason too, its order should be reversed.

For the reasons set forth herein, this Court should reverse and remand this matter to the district court with instructions to grant Appellants' motion to unseal.

3

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal under the collateral order doctrine. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949); *see also United States v. Erie Cty.*, 763 F.3d 235, 238 n.5 (2d Cir. 2014) ("*Erie County*"); *Lugosch*, 435 F.3d at 117; *ABC, Inc. v. Stewart*, 360 F.3d 90, 97 (2d Cir. 2004). This appeal is timely because the district court entered its order on August 26, 2016, and Appellants filed their Notice of Appeal on September 22, 2016.

## STATEMENT OF ISSUES

1. Whether the district court erred in denying Appellants' application to unseal court records in *Hardy* under the First Amendment to the U.S. Constitution.

2. Whether the district court erred in denying Appellants' application to unseal court records in *Hardy* under common law.

3. Whether the district court failed to properly apply the correct legal standards under common law and under the First Amendment to the U.S. Constitution when it sealed the court records in *Hardy* that are the subject of Appellants' application to unseal, and failed to make adequate findings on the record to support its sealing of those records.

4. Whether the district court failed to properly apply the correct legal standards for evaluating Appellants' application to unseal court records in *Hardy* under common law and under the First Amendment to the U.S. Constitution, and

failed to make adequate findings on the record to support its order denying

Appellants' application to unseal.

## STATEMENT OF THE CASE

On July 12, 2016, Appellants filed a letter motion in the Southern District of

New York requesting that the district court unseal all sealed judicial documents in

*Hardy*.  On August 12, 2016, Appellees Mr. Trump and The Trump Organization

filed a letter with the district court opposing that motion.  On August 23, 2016,

counsel for the *Hardy* plaintiffs submitted a letter to the district court indicating no

opposition to the motion to unseal.  By order dated August 26, 2016, the district

court, the Honorable Thomas P. Griesa presiding, denied Appellants' motion.

Time and the Reporters Committee appeal.

### I.    The *Hardy* litigation.

*Hardy* arose out of the demolition of the Bonwit Teller building on Fifth

Avenue in midtown Manhattan to make way for the building now known as Trump

Tower.  *See Diduck v. Kaszycki & Sons Contractors, Inc.*, 874 F.2d 912, 913 (2d

Cir. 1989).  In 1979, The Trump Organization and the Equitable Life Assurance

Company created a joint venture—the Trump Equitable Fifth Avenue Company

("Trump-Equitable")—to perform the demolition and construct Trump Tower.  *Id.*

Trump Equitable hired William Kaszycki and his company Kaszycki & Sons

Contractors, Inc. (collectively, "Kaszycki") to complete the demolition.  *Id.*

First filed in 1983, and originally captioned *Diduck v. Kaszycki & Sons Contractors, Inc.*, *Hardy* was a class action lawsuit alleging that Kaszycki employed undocumented and non-union Polish workers—sometimes referred to as the "Polish Brigade"—who performed much of the demolition work and were paid "off-the-books." *Id.* at 914–16; *Diduck v. Kaszycki & Sons Contractors, Inc.*, 774 F. Supp. 802, 805 (S.D.N.Y. 1991). The lawsuit stemmed from the alleged failure of Kaszycki and Trump-Equitable to make required contributions for the Polish workers' wages to a construction union's insurance trust funds and pension funds. *Diduck*, 874 F.2d at 916. The class of plaintiffs consisted of "all persons who are, will be, or have been at any time since January 1, 1980, participants in and/or beneficiaries of" the union funds. *Diduck*, 774 F. Supp. at 804 n.1. Appellees were among the named defendants in *Hardy*. *Diduck*, 874 F.2d at 916.

In 1999, the district court dismissed *Hardy* with prejudice following a settlement by the parties. *See* App. at 25. The district court's docket reflects at least four sealed documents[2] that were either filed with or entered by the court under seal in the months leading up to the district court's dismissal of *Hardy*:

---

[2] Appellees asserted in the district court that, except for "three settlement-related documents," all other records from the *Hardy* litigation are publicly available. *See* App. at 34. The district court's docket, however, indicates that four documents are under seal.

- ECF No. 409, filed on October 29, 1998 and described in the docket as "SEALED DOCUMENT placed in vault (da) (Entered: 11/02/1998)"

- ECF No. 410, filed on November 9, 1998 and described in the docket only as "(kb) (Entered: 11/09/1998)"

- ECF No. 411, filed on January 6, 1999 and described in the docket as "SEALED DOCUMENT placed in vault (da) (Entered: 01/06/1999)"

- ECF No. 412, filed on February 11, 1999 and described in the docket as "SEALED DOCUMENT placed in vault (da) (Entered: 02/11/1999)."[3]

## II.     Appellants' motion to unseal.

On July 12, 2016, Appellants filed a letter motion with the Honorable Thomas P. Griesa, who had presided over *Hardy* at the time of its dismissal in 1999. *See* App. at 28–33. By that motion, Appellants sought to unseal all sealed court records from the *Hardy* case, including ECF Nos. 409, 410, 411, and 412. *Id.* at 28. Noting that Mr. Trump, the then-presumptive Republican presidential nominee was a defendant in *Hardy*, Appellants argued, *inter alia*, that the public has a particularly strong interest in obtaining access to the sealed records, as they

---

[3] The district court's April 20, 1999 order dismissing all claims, counterclaims, and cross-claims between the parties refers to "the Court's 2/9/99 and 12/30/98 orders." App. at 25. It is unclear whether ECF Nos. 411 and 412, which the docket states were filed on January 6, 1999 and February 11, 1999, respectively, are the orders referred to in the district court's order of dismissal. *See id.* If not, it would appear that there are additional sealed documents in the *Hardy* matter that are not reflected on the docket.

7

would provide the public with insight into Mr. Trump's use of the court system, as well as the opportunity to learn the outcome of specific civil litigation to which he was a party. *Id.* at 29. The motion also noted that the allegations made by the *Hardy* plaintiffs—that businesses affiliated with Mr. Trump failed to make required payments to certain union funds and employed undocumented immigrants—spoke directly to issues at the forefront of Mr. Trump's presidential campaign, including his opposition to illegal immigration. *Id.* at 30.

Appellants argued that the press and the public have both a First Amendment and common law right to access the sealed records in *Hardy*, which appeared to include settlement terms filed with the district court for its approval in accordance with Rule 23(e). *Id.* at 30–31. Appellants further argued that no countervailing or compelling interest overcomes the strong presumption in favor of public access to those judicial documents; that the district court erroneously failed to make any specific, on-the-record findings when it initially sealed them; and that, in the event that sealing of any portion of those court records was found to be necessitated by higher values, such sealing must be narrowly tailored. *Id.* at 32–33.

On August 12, 2016, Appellees Mr. Trump and The Trump Organization filed a letter response to Appellants' motion arguing that the district court should maintain the records under seal. App. at 34–35. According to that response, the

8

sealed records consist of "a transcript of a settlement conference" in which the

parties "discussed the potential terms and conditions of a settlement" and two

"virtually identical Orders where [the district court] simply 'So-Ordered' the

parties' settlement." App. at 35. While the response stated that no written

settlement agreement executed between the parties was filed in the *Hardy* case, it

indicated that the sealed district court orders contain at least some of the terms of

the parties' settlement agreement. *Id.* Specifically, the response stated that, "as

per the express terms of the parties' settlement (*See February 9, 1999 Order at

page 3, first paragraph at top)*, there were zero settlement funds that were paid to

the members of the certified class individually." *Id.* (emphasis in original).

On August 22, 2016, Appellants submitted a reply letter in support of their

motion to unseal. *See* App. at 36–38. The reply reiterated Appellants' position

that the common law and First Amendment rights of access attach to the sealed

records, including the district court orders, which, *inter alia*, reflect the district

court's approval of the final terms of the settlement. *Id.* at 36–37. In addition,

noting, among other things, Appellees' decision to selectively disclose at least one

term of the settlement in its response letter—that "zero settlement funds" were

"paid to the members of the certified class individually," *id.* at 36—the reply

argued that Appellees had demonstrated no countervailing interest, let alone a

9

compelling one, sufficient to overcome the public's right to access the sealed documents. *Id.* at 37.

The following day, August 23, 2016, Lewis M. Steel, counsel to plaintiffs in *Hardy*, filed a letter with the district court. *See* App. at 39–40. The letter stated that, according to Wendy Sloan, Mr. Steel's former co-counsel, the named plaintiffs in *Hardy* "are deceased." *Id.* at 39. The letter also stated that Ms. Sloan "knows of no one who was a member of the plaintiff class that has a privacy interest in the documents in this matter that are presently sealed as confidential." *Id.* The letter further stated that neither Ms. Sloan nor Mr. Steel "know of any reason why those documents should not at this time be unsealed." *Id.*

### III.    The district court's order.

On August 26, 2016, the district court denied Appellants' motion to unseal in a two-page order, which stated, in part:

> Based on the record, the Court originally had good cause to grant the parties' joint request to seal settlement-related documents in this matter. In weighing the public's right to access court documents against the interest in facilitating settlement in complex cases, the Court found that the balance favored confidentiality.

App. at 41.

The district court further concluded that Appellants were required to and had "fail[ed] to provide specific facts that establish extraordinary circumstances or a compelling need to unseal the documents[,]" and had not "argued that the sealing

10

was improvidently granted in the first instance." *Id.* at 41–42. According to the district court, Appellants had cited only "generalized Constitutional and common law reasoning, and the fact of an upcoming presidential election[,]" as well as "the importance and relevance of the documents to which they seek access." *Id.* at 41.

Time and the Reporters Committee appealed. *See* App. at 43.

## ARGUMENT

### I. Standard of Review

"[T]he First Amendment concerns implicated by the sealing of proceedings or documents mandate close appellate scrutiny." *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013). In reviewing a district court's order to seal or unseal court records, this Court examines the district court's factual findings for clear error, its legal determinations *de novo*, and its ultimate decision to seal or unseal for abuse of discretion. *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016). Because a district court's discretion to seal documents is significantly circumscribed by constitutional principles set forth by the U.S. Supreme Court, this Court's review of such a decision "is more rigorous than would be the case in other situations in which abuse-of-discretion review is conducted." *United States v. Doe*, 63 F.3d 121, 125 (2d Cir. 1995) (internal quotation marks omitted); *see also Newsday*, 730 F.3d at 163 (stating that in such cases, the Court has "traditionally undertaken an

11

independent review of sealed documents, despite the fact that such a review may raise factual rather than legal issues").

## II.   Judicial documents in civil cases are presumptively open to the public under common law and the First Amendment.

*A. Public access to judicial documents is integral to our system of government; the public's interest in access is heightened in cases involving public officials and candidates for public office.*

**1.**  The right of the press and the public to access judicial proceedings and documents "is said to predate even the Constitution itself." *Erie County,* 763 F.3d at 239; *see also Lugosch*, 435 F.3d at 119.  And, as this Court has recognized, it is a right "integral to our system of government." *Erie County*, 763 F.3d at 238–39. "[B]ased on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice[,]" the right of the public to access judicial proceedings and documents is "an essential feature of democratic control" of our judicial system. *Amodeo II*, 71 F.3d at 1048.  It both promotes judicial accountability by "provid[ing] judges with critical views of their work and deter[ring] arbitrary judicial behavior" and encourages "confidence in the conscientiousness, reasonableness, [and] honesty of judicial proceedings." *Id.* Public monitoring of the courts "is not possible without access to testimony and documents that are used in the performance of Article III functions." *Id.*

12

**2.** Because "[w]hat transpires in the court room is public property," *Craig v. Harney*, 331 U.S. 367, 374 (1947), access to judicial proceedings and documents also permits the public and the press to monitor the functioning of government more broadly, beyond just the judiciary. As the U.S. Supreme Court has stated, the common law right of access arises out of "the citizen's desire to keep a watchful eye on the workings of public agencies" and "in a newspaper publisher's intention to publish information concerning the operation of government." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–98 (1978); *see also N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2012) ("*NYCLU*") (stating that the right of the public to access judicial proceedings "protects the public against the government's 'arbitrary interference with access to important information'" (quoting *Richmond Newspapers, Inc. v. Virginia*, 488 U.S. 555, 583 (1980)).

Accordingly, when litigation involves the government, government officials, or candidates for public office, access to judicial documents and proceedings plays an additional important role in ensuring public scrutiny of government officials and candidates and their litigation positions. *See Doe v. Pub. Citizen*, 749 F.3d 246, 271 (4th Cir. 2014); *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) ("[I]n such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch."); *see also Smith v. United States Dist. Court for S. Dist.*, 956 F.2d

647, 650 (7th Cir. 1992) (same). Thus, as this Court previously recognized, the presumption in favor of public access "is especially strong" in cases where the judicial documents sought "show[] the actions of public officials." *In re NBC, Inc.*, 635 F.2d 945, 952 (2d Cir. 1980) ("*Myers*") (affirming district court order granting television networks' motion seeking access to videotapes entered into evidence in a criminal trial); *see also United States v. Beckham,* 789 F.2d 401, 413 (6th Cir.1986) (stating that "when the conduct of public officials is at issue, the public's interest in the operation of government adds weight in the balance toward allowing permission to copy judicial records").

B. *Both common law and the First Amendment guarantee the public a presumptive right to access judicial documents in civil proceedings.*

This Court has recognized "two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment and a slightly weaker form based in federal common law." *Newsday*, 730 F.3d at 163. Both presumptions apply to civil—not just criminal— proceedings and records. *Id.* (citing *Richmond Newspapers*, 448 U.S. at 580 and *NYCLU*, 684 F.3d at 298). And, because the public "has an interest in what goes on at all stages of a judicial proceeding," *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999), both the constitutional and common law presumptions of access apply both before and after trial.

**1.** The common law presumption of access attaches to all "judicial documents"—*i.e.*, documents that are "'relevant to the performance of the judicial function and useful in the judicial process.'" *Lugosch*, 435 F.3d at 119 (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d. Cir. 1995) ("*Amodeo I*")). In determining whether a document is a judicial document, the court must evaluate "the relevance of the document's specific contents to the nature of the proceeding" and "whether access to the [document] would materially assist the public in understanding the issues before the . . . court, and in evaluating the fairness and integrity of the court's proceedings." *Newsday*, 730 F.3d at 166–67.

Applying this standard, this Court has held, for example, that the common law presumption applies to pleadings, *Bernstein*, 814 F.3d at 140, documents submitted to a district court in connection with a summary judgment motion, *Lugosch*, 435 F.3d at 121, compliance reports filed pursuant to a settlement agreement, *Erie County*, 763 F.3d at 241, and investigative reports filed by a court-appointed monitor pursuant to a consent decree, *Amodeo I*, 44 F.3d at 146.

Once a court determines that a particular document is a judicial document to which the common law presumption of access attaches, it then "must determine the weight" of that presumption. *Lugosch*, 435 F.3d at 119; *Amodeo II*, 71 F.3d at 1049. As this Court has explained:

> [T]he weight to be given the presumption of access must
> be governed by the role of the material at issue in the

> exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.

*Amodeo II*, 71 F.3d at 1049.

**2.** In addition to the common law right of access, which applies to all judicial documents, the First Amendment guarantees a presumptive right of access to "particular types of judicial documents." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004) ("*Pellegrino*"). In determining whether the First Amendment right of access applies, this Court has applied the "experience and logic" test, which asks "whether the documents 'have historically been open to the press and general public' and whether 'public access plays a significant positive role in the functioning of the particular process in question.'" *Lugosch*, 435 F.3d at 120 (quoting *Pellegrino*, 380 F.3d at 92); *see also Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8 (1986) ("*Press-Enterprise II*").

### III. Both the common law and First Amendment presumptions of access apply to the sealed district court records in *Hardy*.

*A. The sealed settlement-related records are "judicial documents" to which a strong common law right of access applies.*

According to Appellees, the sealed documents in this case include "a transcript of a settlement conference" that was filed with the district court in connection with obtaining the district court's approval of a settlement agreed upon

by the parties, and two "virtually identical Orders" in which the district court "'So-Ordered' the parties' settlement." *See* App. at 35. Such documents are unquestionably judicial documents that the public has a strong presumptive right to access under common law. *See Lugosch*, 435 F.3d at 119; *Amodeo I*, 44 F.3d at 145.

**1.** As an initial matter, with respect to the two sealed orders of the district court, "it is commonsensical that judicially authored or created documents are judicial records." *In re United States*, 707 F.3d 283, 290 (4th Cir. 2013). Without access to a district court's orders, the public cannot evaluate "the fairness and integrity of the court's proceedings," including their ultimate outcome. *Newsday*, 730 F.3d at 167. Moreover, because "few, if any, documents have a greater 'role' in the 'exercise of Article III judicial power' than the decisions of judges," court orders are subject to a particularly strong presumption of access under common law. *Ferrand v. Lynonnais*, 106 F. Supp. 3d 452, 455 (S.D.N.Y. 2015) (quoting *Amodeo II*, 71 F.3d at 1049).

**2.** In addition, all the sealed records at issue here are judicial documents to which a strong common law right of access attaches because they consist of final settlement terms and supporting material submitted to the district court by the parties in connection with seeking judicial approval of their class action settlement—a settlement that was, in fact, ultimately approved by the district court.

17

*See* App. at 35 (stating that the sealed February 9, 1999 order contains "the express terms" of the parties' final settlement and that the district court "'So-Ordered' the parties' settlement"). The sealed documents are, thus, "relevant to the performance of the judicial function and useful in the judicial process." *Amodeo I*, 44 F.3d at 145. And because those documents reflect a direct exercise of Article III judicial power—namely, the district court's approval of a settlement—the weight to be accorded the common law presumption of access to those documents is strong. *See, e.g., In re Sept. 11 Litig.*, 723 F. Supp. 2d 526, 532 (S.D.N.Y. 2010); *see also Amodeo II*, 71 F.3d at 1049; *FTC*, 830 F.2d at 408–09 & n.5 (ruling in favor of access to documents filed with the court in furtherance of judicial approval of a consent decree where the documents "were material and important to [the district court's] decision to approve the settlement"), *cited with approval in Amodeo II*, 71 F.3d at 1049.

Access to the sealed settlement-related judicial documents at issue here is necessary for the public to evaluate the district court's decision to approve the parties' settlement, and to assess whether the district court followed applicable procedures in doing so. *See In re Sept. 11 Litig.*, 723 F. Supp. 2d at 532 (stating that a district court's decision to approve a settlement agreement "is based on the information presented to [it]"). In particular, in this case, access to the sealed

18

settlement-related documents will enable the public to assess whether the district court's approval of the class action settlement complied with Rule 23(e).

As this Court has recognized, the district court has "a larger role" in the settlement of class actions. *Janus Films, Inc. v. Miller*, 801 F.2d 578, 582 (2d Cir. 1986). Since at least 1966, Rule 23(e) has required court approval for the dismissal or compromise of any class action. *See* Fed. R. Civ. P. 23(e) Notes of the Advisory Committee on Rules – 1966 Amendment. Specifically, Rule 23(e)(2) requires district courts to approve settlements that would bind class members only if the proposal is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also Janus*, 801 F.2d at 582. Thus, because *Hardy* was a class action lawsuit, *see Diduck*, 774 F. Supp. at 804, the "claims, issues, or defenses of [the] certified class" could "be settled, voluntarily dismissed, or compromised *only* with the [district] court's approval." *See* Fed. R. Civ. P. 23(e) (emphasis added). Given that the settlement-related documents filed with or issued by the district court in *Hardy* were unquestionably "relevant and useful to the performance of" that "judicial function"—*i.e.*, approval of the parties' settlement—they are "judicial documents" to which the common law presumption attaches. *See Amodeo I*, 44 F.3d at 145.[4]

---

[4] Notably, district courts in this Circuit have "held overwhelmingly, if not unanimously," that the common law presumption applies to settlements under the Fair Labor Standards Act (the "FLSA"), which, like class action settlements, must

Appellees argued before the district court, below, that because "zero settlement funds . . . were paid to the members of the certified class individually," the district court "seemingly was not asked or required to determine whether the class settlement was 'fair, reasonable, and adequate'" under Rule 23(e). *See* App. at 35 (further stating that "it appears that the [district court] did not even require that the class members themselves be provided with notice of the settlement (as per Rule 23)"). However, Rule 23(e), by its express terms, does not condition its requirement of court approval on the amount of funds—or lack thereof—to be paid to class members individually pursuant to a settlement. *See* Fed. R. Civ. P. 23(e). And Appellees' suggestion, below, that the requirements of Rule 23(e) were not followed is more reason—not less—for the public to have access to the sealed settlement-related documents. *See Amodeo II*, 71 F.3d at 1048.

In any event, even if the parties did not seek district court approval of the settlement in order to comply with Rule 23(e), specifically, it is undisputed that they nevertheless sought and obtained approval, since the district court issued two orders ultimately approving—or "'So-Order[ing]'"—their settlement. *See* App. at

---

be judicially approved. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335, 340 (S.D.N.Y. 2012). Indeed, one district court's review of relevant precedent did "not reveal[] a single federal case that considers the question and holds that the presumption of public access does not attach to FLSA settlements." *Joo v. Kitchen Table, Inc.*, 763 F. Supp. 2d 643, 646 (S.D.N.Y. 2011).

35.  Thus, regardless of the parties' reason for doing so, having invoked the Article III judicial power of the district court to approve their settlement, Appellees cannot now attempt to avoid public scrutiny by arguing that the district court's role in facilitating that settlement "seems" to have been "negligible."  *Id.*; *see Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992) ("Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case").

**3.**  Contrary to the argument made by Appellees before the district court, under this Court's precedent, final settlement terms that are filed with and approved by a district court are presumptively accessible to the public under common law.  In determining the applicability of the common law presumption of access to settlement-related documents, this Court has distinguished, for example, preliminary confidential settlement discussions between parties on the one hand from final settlement terms and related documents filed with the court on the other.

In *United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 857 (2d Cir. 1998) ("*Glens Falls*"), a case cited by Appellees before the district court, this Court held that records reflecting nonfinal settlement discussions and settlement proposals made by the parties that were not filed on the court's docket do not carry a presumption of public access.  The Court reasoned that such documents have "no value to those monitoring the exercise of Article III judicial power by the federal

courts," because "[t]he judge cannot act upon these discussions or documents until they are final." *Id.* The Court in *Glens Falls* went on to explain that "before any of the draft settlement documents can result in judicial ratification or rejection, *there must be a proceeding in open court, and the document sought to be acted upon by the judicial power will be placed on file and must become a public record.*" *Id.* (emphasis added). In addition, the Court stated its expectation that any draft settlement document would eventually be "merged into a tentative final agreement for court action, thereby becoming public." *Id.*

Similarly, in *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 n.6, 144 (2004), this Court held that it would be an abuse of discretion for the trial court in that case to unseal a transcript of a settlement conference containing confidential information about a private settlement agreement entered into between the parties on a confidential basis where the parties had not asked the district court to approve or otherwise act in any way with respect to the settlement. In so holding, the Court cited with approval case law stating that "'[o]nce a settlement is filed in the district court, it becomes a judicial record[,]'" and that the common law presumption of access "'applies to settlement agreements that are filed and submitted to the district court for approval.'" *Id.* at 143 (quoting *SEC v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993) ("*Van Waeyenberghe*") (citation omitted)). Moreover, the Court in *Gambale* concluded that "statements at [a settlement] conference . . .

22

having been reduced to transcript form and filed, [are] part of a judicial record to which some presumption of openness" therefore attaches. *Id.*

This Court's decisions in *Glens Falls* and *Gambale* underscore that final settlements submitted to a court for its approval are presumptively open to the public. Indeed, in *In re September 11 Litigation*, the Southern District of New York applied *Glens Falls* to reach precisely that conclusion, holding that a strong common law and constitutional presumption of access applied to final settlement terms submitted to the court for approval. 723 F. Supp. 2d at 532–33. In so holding, the court specifically relied upon this Court's statement in *Glens Falls* that a final settlement would be subject to "'a proceeding in open court, and the document sought to be acted upon by the judicial power will be placed on file and must become a public record.'" *Id.* at 532 (quoting *Glens Falls*, 160 F.3d at 857).

In this case, although Appellees stated below that there is no written settlement agreement between the parties, the sealed district court orders contain the "express terms" of the parties' final settlement, as approved by the district court. App. at 35. Those orders, along with the sealed transcript, which was filed with the district court in connection with obtaining that approval, *see Gambale*, 377 F.3d at 143, are thus plainly distinguishable from settlement-related materials that are not directly connected to an exercise of Article III power. Because the parties here conveyed the final settlement terms to the district court to obtain

23

judicial ratification, and the district court, in turn, exercised its judicial power to approve those settlement terms, the weight to be given the presumption of access here is substantial.

B. *The First Amendment also guarantees the public a powerful presumptive right to access the sealed settlement-related documents.*

In addition to the common law presumption of access, both "experience and logic" dictate that the First Amendment presumptive right of public access to judicial documents applies to the sealed settlement-related filings at issue here. *Lugosch*, 435 F.3d at 120; *Pellegrino*, 380 F.3d at 92.

**1.** As to the experience prong, in determining whether documents have historically been open to the press and general public, courts in this Circuit "have generally invoked the common law right of access to judicial documents in support of finding a history of openness." *Pellegrino*, 380 F.3d at 92. As shown above, *see supra* Section III.A, the sealed settlement-related documents at issue in this appeal are judicial documents to which the common law right of access attaches. Moreover, numerous federal appellate courts have recognized a tradition of openness of judicial decisions, like the sealed orders of the district court here. *See, e.g., United States v. Mentzos,* 462 F.3d 830, 843 n.4 (8th Cir. 2006) (denying motion to file opinion under seal because "decisions of the court are a matter of public record"); *Union Oil Co. of Cal. v. Leavell,* 220 F.3d 562, 568 (7th Cir. 2000) ("[I]t should go without saying that the judge's opinions and orders belong

24

in the public domain."); *In re United States*, 707 F.3d at 290. And there is history, in some circuits dating back decades, of federal appellate courts recognizing the public availability of settlements filed with the court. *See Herrnreiter v. Chi. Hous. Auth.*, 281 F.3d 634, 636 (7th Cir. 2002); *Van Waeyenberghe*, 990 F.2d at 849; *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 343, 345 (3d Cir. 1986) ("*Bank of America*").

**2.** As to the logic prong, public access to court orders and to judicial documents related to a district court's approval of a class action settlement play a "significant positive role" in the functioning of the judicial system. *Press-Enterprise II*, 478 U.S. at 8. Access to judicial decisions, generally, is fundamental to the ability of the public to monitor the judiciary in order to "'provide[] judges with critical views of their work and deter[] arbitrary judicial behavior.'" *Lugosch*, 435 F.3d at 120 (quoting *Amodeo II*, 71 F.3d at 1048). Without such access, "public oversight of the courts, including the processes and the outcomes they produce, would be impossible." *Doe*, 749 F.3d at 267; *see also Amodeo II,* 71 F.3d at 1048 (stating that public monitoring of the courts "is not possible" without access to documents "used in the performance of Article III functions").

Where a district court is called upon to approve the terms of a settlement, particularly in the context of a class action lawsuit, the actions of the district court are matters of "which the public has a right to know about and evaluate." *Bank of*

*America*, 800 F.2d at 344. As set forth above, Rule 23(e) requires district courts to approve class action settlements after consideration of, among other things, the fairness of the settlement terms to the certified class. *See* Fed. R. Civ. P. 23(e). Before the public can meaningfully evaluate a district court's decision to approve such a settlement, and whether the requirements of Rule 23(e) were met, they must know the terms that were approved by the district court. *See Geltzer v. Andersen Worldwide, S.C.*, No. 05 Civ. 3339 (GEL), 2007 WL 273526 at *2 (S.D.N.Y. Jan. 30, 2007) ("The press and public could hardly make an independent assessment of the facts underlying a judicial disposition, or assess judicial impartiality or bias, without knowing the essence of what the court has approved."); *see also In re Sept. 11 Litig.*, 723 F. Supp. 2d at 532. For these reasons, logic too dictates that the First Amendment right of access applies to the sealed judicial documents at issue.

## IV. The district court applied incorrect legal standards both when it originally sealed the settlement-related documents and when it denied Appellants' motion to unseal.

**1.** Where, as here, the common law presumption of access applies, to determine whether it has been overcome, a court must "balance competing considerations against it.'" *Amodeo II*, 71 F.3d at 1050. Judicial documents may be kept under seal consistent with the common law right of access *only* if countervailing factors so demand. *Lugosch*, 435 F.3d at 120. The constitutional standard is even more exacting, as the First Amendment presumption "prevails

unless it is overcome by 'specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim.'" *Newsday*, 730 F.3d at 165 (quoting *Lugosch*, 435 F.3d at 124). Under both common law and the First Amendment, the party seeking to prevent disclosure bears the burden of demonstrating that the strong presumptions in favor of public access are overcome. *Lugosch*, 435 F.3d at 126.

**2.** Here, the district court applied a "good cause" standard when it sealed the judicial documents at issue in this appeal. *See* App. at 41 (stating that "the Court originally had good cause to grant the parties' joint request to seal settlement related documents in this matter"). And, in evaluating Appellants' motion to unseal, the district court concluded that Time and the Reporters Committee were required to justify unsealing those records by "provid[ing] specific facts that establish extraordinary circumstances or a compelling need to unseal the documents[,]" or by showing "that the sealing was improvidently granted in the first instance." App. at 41–42. Thus, the district court appears to have erroneously applied the legal standard applicable to Rule 26(c) protective orders governing discovery exchanged between parties in litigation, rather than the correct, far more stringent legal standards applicable to judicial documents to which the common law and First Amendment presumptions of access apply.

Rule 26(c)(1) provides that "[a] party or any person from whom discovery is sought may move for a protective order" and that "[t]he court may, for *good cause*, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." (Emphasis added.) In this Circuit, a Rule 26(c) protective order, once issued by a court and reasonably relied upon by the parties, cannot be modified "absent a showing of improvidence in the grant of [the] protective order or some extraordinary circumstances or compelling need." *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979).

Neither Rule 26(c)'s "good cause" standard nor this Court's decision in *Martindell*, however, apply to determinations to seal or unseal judicial documents. By its plain language, Rule 26(c) applies in the context of discovery. *See, e.g.,* Fed. R. Civ. P. 26(c)(1) ("A party or any person from whom discovery is sought may move for a protective order . . . ."). And this Court has indicated that unfiled discovery materials merely exchanged between parties to a civil lawsuit are not judicial records presumptively open to the public. *See Amodeo II*, 71 F.3d at 1050 (stating that documents "that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the [common law] presumption's reach"). *Martindell*, which involved a request for access to discovery materials subject to a Rule 26(c) protective order, unsurprisingly, did not address the common law or First Amendment presumptions

28

of access to judicial documents. 594 F.2d at 293, 297 (denying motion for access to pretrial deposition transcripts taken pursuant to protective order).

*Martindell* was decided decades before *Amodeo I* and *II*, in which this Court recognized the common law presumption of access to judicial documents. And, while the Court had applied *Martindell* to settlement-related materials in certain cases prior to deciding *Amodeo I* and *II*, it appears to have done so in circumstances where the settlement-related materials at issue were akin to unfiled discovery materials exchanged between private parties pursuant to a protective order. For example, prior to deciding *Amodeo I* and *II*, this Court applied the *Martindell* standard in two cases involving settlement agreements entered into between private parties where the agreements were neither approved by the district court, nor filed with the district court for any other reason. *Palmieri v. New York*, 779 F.2d 861, 863–64 (2d Cir. 1985); *Fed. Deposit Ins. Corp. v. Ernst & Ernst*, 677 F.2d 230, 232 (2d Cir. 1982) (per curiam). Such settlements, which do not invoke the district court's Article III powers, are thus plainly distinguishable from the class action settlement in *Hardy*. In any event, since *Amodeo I* and *II* were decided, this Court has expressly clarified that *Martindell* applies *only* "in the case of documents that are *not* 'judicial documents.'" *SEC v. TheStreet.Com*, 273 F.3d 222, 234 (2d Cir. 2001) (emphasis added). Thus, it does not apply here.

In sum, this Court's precedent makes clear that the sealing and unsealing of judicial documents like those at issue in this appeal is to be evaluated *not* according the "good cause" standard of Rule 26(c) and *Martindell*, but rather according to the far more demanding common law and First Amendment standards described above.[5] *See id.*; *Lugosch*, 435 F.3d at 120; *Amodeo II*, 71 F.3d 146–47; *see also Newsday*, 730 F.3d at 166 (explaining that "the facts necessary to show good cause for a protective order applicable to discovery documents that are not yet implicated in judicial proceedings will not necessarily meet the higher threshold imposed by the First Amendment with respect to judicial documents"). The district court's failure to apply the correct legal standards when evaluating Appellants' motion to unseal in this case, alone, requires reversal.

**3.** Not only did the district court apply the incorrect legal standard, both when it originally sealed the settlement-related documents at issue and when it denied Appellants' motion to unseal, but contrary to the requirements set forth by the U.S. Supreme Court in *Press-Enterprise II*, 478 U.S. at 13–14, it also failed to make *any* on-the-record findings that sealing is necessary to preserve

---

[5] Even assuming, *arguendo*, that the *Martindell* presumption against public access could somehow be applied in the context of a motion to unseal judicial documents, it would still be inapplicable here. *Martindell* applies only "[w]here there has been reasonable reliance by a party or deponent" upon a protective order entered under Rule 26(c). *TheStreet.Com*, 273 F.3d at 229. Appellees have not demonstrated, and the district court did not find, that there was any such reasonable reliance on a by Appellees or any other party to the *Hardy* litigation.

countervailing or higher values.  There is no entry on the district court's docket for any motion to seal made by any party to the *Hardy* litigation, nor is there any indication of the existence of a written order sealing the judicial documents at issue.  Likewise, in its two-page order denying Appellants' motion to unseal, the district court made no specific findings that continued sealing of the settlement-related records was necessitated by overriding countervailing or higher values.  The district court failed to identify what weight—if any—it ascribed to the public's right of access.  Nor did it explain how its order sealing the judicial documents at issue in this appeal in their entirety is sufficiently narrowly tailored, or discuss whether it considered any alternatives to such wholesale sealing, such as redaction.

"Broad and general findings by the trial court . . . are not sufficient to justify closure" of court proceedings or the sealing of court records.  *See In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987).  Such findings must, at a minimum, be "specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984).  The district court's failure to make specific, on-the-record findings in support of either its initial sealing order or its order denying Appellants' motion to unseal is itself reversible error.  *See United States v. Haller*, 837 F.2d 84, 87 (2d Cir. 1988); *United States v. Alcantara*, 396 F.3d 189, 192 (2d Cir. 2005).

**V.     Under the applicable common law and First Amendment standards, properly applied, Appellants' motion to unseal should be granted.**

*A. There is no countervailing interest, let alone a compelling one, that overcomes the public's rights to access the settlement-related records.*

Had the district court properly applied the correct legal standards governing requests to unseal judicial documents to which the common law and First Amendment rights of access apply, it would have granted Appellants' motion to unseal.  There is nothing in the record demonstrating that the initial sealing or the continued sealing of the settlement-related judicial documents at issue is justified.  Neither Appellees nor the district court have identified any countervailing considerations that could overcome the strong common law presumption of access in this case, let alone the type of compelling interest necessary to overcome the First Amendment presumption of access.

Appellees suggested to the district court below, in a footnote, that "privacy interests" of other parties to the *Hardy* lawsuit and/or their counsel may be implicated by unsealing.  *See* App. at 34 n.1.  Yet Appellees did not identify what "privacy interests" they believe might possibly be affected by unsealing, nor did Appellees assert that they themselves had any specific "privacy interest" that would be implicated by unsealing.  *Id.*[6]  And, as counsel to the *Hardy* plaintiffs

---

[6] There is no "generalized right of privacy enjoyed by participants in judicial proceedings."  *In re CBS, Inc.*, 828 F.2d 958, 960 (2d Cir. 1987).

informed the district court, the named plaintiffs are deceased, and their counsel knows of no privacy interest of any member of the plaintiff class that would be affected by unsealing. App. at 39. In fact, counsel for the *Hardy* plaintiffs informed the district court that they were not aware of *any* reason why the documents should not be unsealed. *Id*.

The district court's order, in any event, makes no mention of privacy as a basis for maintaining the settlement-related documents under seal. Instead, the district court's order indicates that a general "interest in facilitating settlement in complex cases" motivated its original decision to find "good cause" for sealing the records at issue. *See* App. at 41. Neither the district court nor Appellees, however, have asserted that confidentiality was necessary to obtain a settlement in the *Hardy* case, specifically, or that continued sealing serves any interest whatsoever. A general interest in promoting the settlement of cases cannot, by itself, justify sealing judicial documents concerning a class action settlement approved by a district court. *In re Sept. 11 Litig.*, 723 F. Supp. at 532; *see also Bank of America*, 800 F.2d at 346. This is particularly true when, as here, the public has a particularly powerful interest in access. *See Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, No. 14-cv-6867 (VEC), 2016 WL 1071107 at *15 (S.D.N.Y. Jan. 12, 2015) (recognizing that although courts have a general interest in

encouraging settlement, "this does not hold true at all costs"), *aff'd*, 814 F.3d 132

(2d Cir. 2016).

B. *The public has a particularly powerful interest in access to the sealed judicial documents at issue, which were filed in a class action lawsuit to which the now President-elect was a party.*

In denying Appellants' motion to unseal, the district court also erred in

failing to give appropriate consideration to the public's heightened interest in

access to judicial documents concerning candidates for public office and public

officials. *See Myers*, 635 F.2d at 952. Contrary to what is suggested by the district

court's order, Appellants did not rely solely on "generalized Constitutional and

common law reasoning, and the fact of an upcoming presidential election" in

support of their motion to unseal. *See* App. at 41. The district court did not

address Appellants' specific argument, set forth in detail in their motion, that

access to the sealed records in *Hardy*, a case in which the then-Republican

presidential nominee was a named defendant, will provide the public with insight

into matters of the highest public concern. Particularly when the heightened

presumption of access to judicial documents concerning public officials is applied,

it is clear that the public's right of access has not been overcome and the district

court's decision must be reversed.

In *Myers*, 635 F.2d at 947–48, this Court affirmed a district court order

granting television networks access to videotapes admitted into evidence in the

criminal trial of certain public officials.  In doing so, the Court stated that the

presumption in favor of public access "is especially strong in a case like this

where" the material sought "shows the actions of public officials."  *Myers,* 635

F.2d at 952.  Other federal courts of appeals have likewise concluded that

presumption of public access to judicial documents is particularly strong in cases

involving the government or government officials.  *See Doe*, 749 F.3d at 271;

*Smith*, 956 F.2d at 650; *EEOC v. Erection Co., Inc.*, 900 F.2d 168, 172 (9th Cir.

1990) (Reinhardt, J., concurring in part and dissenting in part); *FTC,* 830 F.2d at

410; *Beckham,* 789 F.2d at 413; *United States v. Criden,* 648 F.2d 814, 822 (3d

Cir. 1981); *In re NBC, Inc.,* 653 F.2d 609, 614 (D.C. Cir. 1981); *see also Romero

v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007) (holding that, in

balancing the right of access against competing interests, the court should consider,

among other factors, "whether the information concerns public officials or public

concerns").

Mr. Trump is the President-elect of the United States and was the

presumptive Republican nominee for President at the time Appellants filed their

motion to unseal.  Although Mr. Trump was not a government official at the time

the *Hardy* litigation was settled, a heightened presumption of access now applies to

the sealed settlement-related records.  The sealed judicial documents relate directly

to issues Mr. Trump placed at the center of his presidential campaign and that,

presumably, will underlie his administration's policies. Among other things, the

settlement-related documents will shed light on Mr. Trump's use of the court

system, generally, which was examined during his presidential campaign and

remains a subject of public discussion following his election. *See, e.g.*, Nick

Penzenstadler & Susan Page, *Exclusive: Trump's 3,500 lawsuits unprecedented*

*for a presidential nominee*, USA Today (June 2, 2016), at https://perma.cc/925W-

SYFM; John Kelly & Nick Penzenstadler, *Trump's courtroom baggage follows*

*him to White House*, USA Today (Nov. 9, 2016), https://perma.cc/U36R-CQJC.

Access to the settlement-related records will also reveal positions that were taken

by Mr. Trump in connection with settling *Hardy*, and the ultimate outcome of that

specific litigation.

Further, the allegations made by the *Hardy* plaintiffs—that businesses hired

by or affiliated with Mr. Trump failed to make required payments to certain union

funds and hired undocumented immigrants to work on the demolition site for the

Trump Tower project—are directly relevant to Mr. Trump's policy positions. Mr.

Trump's opposition to illegal immigration was a central aspect of his presidential

campaign. *See, e.g.*, Donald J. Trump for President, Immigration,

https://www.donaldjtrump.com/policies/immigration (last visited Nov. 17, 2016).

Indeed, Mr. Trump's political opponents used the underlying facts of *Hardy*—the

employment of undocumented workers from Poland in connection with the Trump

Tower project—to criticize Mr. Trump during both the primaries and general election.  *See* Linda Qiu & Riley Snyder, *Hillary Clinton correctly claims that Trump Tower was in part built by undocumented workers*, PolitiFact (Oct. 20, 2016), at https://perma.cc/WZ95-38MW; *Transcript of the Republican Presidential Debate in Houston*, N.Y. Times (Feb. 25, 2016), http://nyti.ms/1Lhjg6S. Following his election, Mr. Trump's opposition to illegal immigration appears to remain among his top priorities.  Andy J. Semotiuk, *What Trump's Presidency Means for Illegal Immigrants And Immigration To The U.S.,* Forbes (Nov. 10, 2016), http://bit.ly/2fWaGvW.  In short, access to the sealed judicial documents in *Hardy* will inform the public about important matters concerning the policies of the President-elect.

There can be no greater public interest in the conduct of government officials than that of the President.  The public interest in access to the sealed documents in *Hardy*, which concern allegations against Mr. Trump and businesses owned by or affiliated with him, was heightened when Mr. Trump was a candidate for President; it is even higher now that he is President-elect.  In denying Appellants' motion, the district court gave no weight to the heightened public interest in the sealed judicial documents at issue here; it failed to recognize that the presumption of access "is especially strong in a case like this" where the material

sought to be unsealed "shows the actions of [a] public official[]." *Myers,* 635 F.2d at 952. For this reason too, its decision must be reversed.

## CONCLUSION

For the foregoing reasons, the Court should vacate the district court's order and remand with instructions to grant the motion to unseal filed by Time and the Reporters Committee.

Dated: November 18, 2016      Respectfully Submitted,

<u>s/Katie Townsend</u>
Katie Townsend
Bruce D. Brown
THE REPORTERS COMMITTEE
FOR FREEDOM OF THE PRESS
1156 15th Street NW, Ste. 1250
Washington, D.C. 20005
(202) 795-9300

Andrew B. Lachow
TIME INC.
225 Liberty Street
New York, NY 10281
(212) 467-8308

*Attorneys for Intervenors-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contains 9,194 words, excluding the parts of the

brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii)

Dated: November 18, 2016        Respectfully Submitted,

*s/Katie Townsend*

Katie Townsend
Bruce D. Brown
THE REPORTERS COMMITTEE
FOR FREEDOM OF THE PRESS
1156 15th Street NW, Ste. 1250
Washington, D.C. 20005
(202) 795-9300

Andrew B. Lachow
TIME INC.
225 Liberty Street
New York, NY 10281
(212) 467-8308

*Attorneys for Intervenors-Appellants*

**SPECIAL APPENDIX**

# TABLE OF CONTENTS

Order of the Honorable Thomas P. Griesa,
    dated August 26, 2016 Appealed From ......................................................SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/26/16
```

-----------------------------------------x

HARDY, *et al.*,    :

            Plaintiffs,    :    No. 83-cv-6346 (TPG)

    – against –    :

KASZYCKI & SONS, *et al.*,    :

           Defendants.    :    **<u>ORDER</u>**

-----------------------------------------x

    On July 12, 2016, non-parties Time Inc. and the Reporters Committee for Freedom of the Press ("Movants") asked the Court to unseal documents in the above-captioned matter.[1]  *See* ECF No. 415.

    Based on the record, the Court originally had good cause to grant the parties' joint request to seal settlement-related documents in this matter.  In weighing the public's right to access court documents against the interest in facilitating settlement in complex cases, the Court found that the balance favored confidentiality.

    Now, in support of their request, Movants cite generalized Constitutional and common law reasoning, and the fact of an upcoming presidential election. They also assert the importance and relevance of the documents to which they seek access.   But Movants fail to provide specific facts that establish

---

[1] For the purposes of this Order, the Court will treat Time Inc. and the Reporters Committee for Freedom of the Press as intervenors under Federal Rule of Civil Procedure 24(b) and the letter of July 12, 2016 as a motion pursuant to Local Rule 7.1(d).

extraordinary circumstances or a compelling need to unseal the documents. Nor have Movants argued that the sealing was improvidently granted in the first instance.

For these reasons, Movants' request to unseal all sealed documents in this matter is DENIED.

SO ORDERED.

Dated: New York, New York
        August 26, 2016

Thomas P. Griesa
United States District Judge