# 16-3273-cv

## United States Court of Appeals

*for the*

## Second Circuit

―――――――――◆―――――――――

M. GUY HARDY, individually and as a participant in the Local 95
Insurance Trust Fund and the Local 95 Pension Fund, and on behalf of all
other persons who are, will be, or have at any time since 1/1/80 been,
participants or beneficiaries in the, JOSEPH HARDY,

*Plaintiffs-Appellees,*

*(For Continuation of Caption See Inside Cover)*

―――――――――――――――――

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-CROSS-DEFENDANTS-CROSS-CLAIMANTS-APPELLEES TRUMP-EQUITABLE FIFTH AVENUE COMPANY, TRUMP ORGANIZATION AND DONALD J. TRUMP, DBA THE TRUMP ORGANIZATION

JARED E. BLUMETTI
LAWRENCE S. ROSEN
LAROCCA HORNIK ROSEN
    GREENBERG & BLAHA, LLP
The Trump Building
40 Wall Street, 32nd Floor
New York, New York 10005
(212) 530-4822

MATTHEW R. MARON
THE TRUMP ORGANIZATION
725 Fifth Avenue
New York, New York 10022
(212) 715-6783

*Attorneys for Defendants-Cross-Defendants-Cross-Claimants-Appellees
Trump-Equitable Fifth Avenue Company, Trump Organization
and Donald J. Trump, dba The Trump Organization*

HARRY J. DIDUCK, HARVEY L. SHERROD,

*Plaintiffs,*

– v. –

EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES,

*Defendant-Cross-Claimant-Appellee,*

WILLIAM KASZYCKI, TRUMP-EQUITABLE FIFTH AVENUE COMPANY, TRUMP ORGANIZATION, HOUSE WRECKERS UNION LOCAL 95 PENSION FUND, Trustees of the House Wreckers Union Local 95 Insurance Trust Fund, KASZYCKI & SONS CONTRACTORS INC., DONALD J. TRUMP, DBA The Trump Organization, JOHN SENYSHYN,

*Defendants-Cross-Defendants-Cross-Claimants-Appellees,*

– v. –

TIME INC., REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS,

*Appellants.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendants-Cross-Defendants-Cross-Claimants-Appellees certify as follows:

1.     Trump-Equitable Fifth Avenue Company does not have a parent corporation and no publicly held corporation owns ten percent (10%) or more of its ownership interest.

2.     Trump Organization does not have a parent corporation and no publicly held corporation owns ten percent (10%) or more of its ownership interest.

# **Table of Contents**

**Page**

CORPORATE DISCLOSURE STATEMENT ...................................................... i

Table of Contents .............................................................................................. ii

Table of Authorities ........................................................................................ iv

INTRODUCTION ..............................................................................................1

COUNTERSTATEMENT
OF ISSUES PRESENTED FOR REVIEW ...........................................................3

COUNTERSTATEMENT OF THE CASE ...........................................................3

SUMMARY OF ARGUMENT ............................................................................6

ARGUMENT ......................................................................................................6

      THE DISTRICT COURT'S DECISION TO SEAL THE SETTLEMENT
      DOCUMENTS IN 1998 WAS PROPER ......................................................6

          I.    There Is No Presumptive
               Right Of Access To the Settlement Documents .....................6

               a.     There Is No Presumptive
                       Right of Access Under The First Amendment ..........7

               b.     There Is No Presumptive
                       Right of Access Under The Common Law ...............9

               c.     Even If There Was A Right Of Access Under
                       Either The First Amendment Or Common Law,
                       The Settlement Documents
                       Should Still Remain Sealed .....................................15

ii

II.   The Settlement Here Is Not A Class
      Settlement Presumptively Open To Public Access ...............16

III.  There Is No Heightened Interest In The
      Settlement Documents As President Trump Was
      Not A Public Official When This Matter Was Settled
      And The Issues In The Case Merely
      Involved Private Business Activities.....................................18

IV.   The District Court Appropriately Acted In Its Sound
      Discretion When It Found Good Cause To Seal The
      Documents ...........................................................................22

CONCLUSION ...................................................................................26

CERTIFICATE OF COMPLIANCE ...................................................27

iii

# Table of Authorities

**Cases**                                                                                                        **Page**

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP,*
814 F.3d 132 (2d Cir. 2016)...............................................................................7, 10

*Brown v. Advantage En'g. Inc.,*
960 F.2d 1013 (11th Cir. 1992) ..............................................................................25

*City of Hartford v. Chase,*
942 F.2d 130 (2d Cir. 1991)...........................................................................11, 24

*Doe v. Pub. Citizen,*
749 F.3d 246 (4th Cir. 2014) ...................................................................................21

*EEOC v. Erection Co., Inc.,*
900 F.2d 168 (9th Cir. 1990) ...................................................................................21

*F.D.I.C. v. Ernst & Ernst,*
677 F.2d 230 (2d Cir. 1982)........................................................................................8

*FTC v. Standard Fin. Mgmt. Corp.,*
830 F.2d 404 (1st Cir. 1987)....................................................................................21

*Gambale v. Deutsche Bank AG,*
377 F.3d 133 (2d Cir. 2004)................................................................ 11, 12, 13, 16

*Geller v. Branic Int'l Realty Corp.,*
212 F.3d 734 (2d Cir. 2000)..............................................................................22, 23

*Geltzer v. Andersen Worldwide, S.C.,*
2007 WL 273526 (S.D.N.Y. Jan. 30, 2007) ...................................................17, 18

*Hasbrouck v. BankAmerica Hous. Servs.,*
187 F.R.D. 453 (N.D.N.Y. 1999)......................................................................22, 23

*Hasbrouck v. BankAmerica Hous. Servs., Inc.,*
190 F.R.D. 42 (N.D.N.Y. 1999) ......................................................................22, 23

*IIT v. Int'l Controls Corp.,*
No. 76 CIV. 1547 (CES), 2009 WL 3094942, (S.D.N.Y. Sept. 28, 2009) ...........24

*In re Franklin Nat. Bank Sec. Litig.,*
92 F.R.D. 468 (E.D.N.Y. 1981) ................................................................................8

*In re N.Y. Times Co. to Unseal Wiretap & Search Warrant Materials,*
577 F.3d 401 (2d Cir. 2009) ....................................................................................8

*In re National Broadcasting Company, Inc.,*
635 F.2d 945 (2d Cir. 1980) ...........................................................................19, 20

*In re NBC, Inc.,*
653 F.2d 609 (D.C. Cir. 1981) ..............................................................................20

*In re Sept. 11 Litig.,*
723 F. Supp. 2d 526 (S.D.N.Y. 2010) ......................................................12, 14, 18

*LEAP Systems, Inc. v. MoneyTrax, Inc.,*
638 F.3d 216 (3d Cir. 2011*)*...........................................................................10, 16

*Lugosch v. Pyramid Co. of Onondaga,*
435 F.3d 110 (2d Cir. 2006)...........................................................................6, 8, 15

*Martindell v. Lit'l Tel. & Tel. Corp.,*
594 F.2d 291 (2d Cir. 1979)...........................................................................24, 25

*Nixon v. Warner Communications, Inc.,*
435 U.S. 589 (1978)..........................................................................................7, 23

*Palmieri v. State of N.Y.,*
779 F.2d 861 (2d Cir. 1985)....................................................................................8

*Press-Enter. Co. v. Superior Court of California for Riverside Cty.*,
478 U.S. 1 (1986) ............................................................................... 15, 16

*Romero v. Drummond Co., Inc.*,
480 F.3d 1234 (11th Cir. 2007) ........................................................... 22

*S.E.C. v. TheStreet.com*,
273 F.3d 222 (2d Cir. 2001) ........................................................... 24, 25

*Schoeps v. Museum of Modern Art*,
603 F. Supp. 2d 673 (S.D.N.Y. 2009) ................................................ 8, 23

*United States v. Amodeo*,
44 F.3d 141 (2d Cir. 1995) ....................................................................7

*United States v. Amodeo*,
71 F.3d 1044 (2d Cir. 1995) .............................................................. 7, 10

*United States v. Beckham*,
789 F.2d 401 (6th Cir. 1986) ................................................................ 20

*United States v. Criden*,
648 F.2d 814 (3d Cir. 1981) ................................................................. 20

*United States v. Erie County, N.Y.*,
763 F.3d 235 (2d Cir. 2014) .............................................................. 7, 10

*United States v. Glens Falls Newspapers, Inc.*,
160 F.3d 853 (2d Cir. 1998) ..................................................... 8, 9, 11, 12

*United States v. King*,
No. 10 CR 122 JGK, 2012 WL 2196674 (S.D.N.Y. June 15, 2012) .................... 15

*United States v. Longueuil*,
567 F. App'x 13 (2d Cir. 2014) ............................................................ 23

*United States v. Town of Moreau, N.Y.*,
979 F. Supp. 129 (N.D.N.Y. 1997) ........................................................................9

## **Statutes**

Fed. R. Civ. P. 23 ..........................................................................................16, 17

Fed. R. Civ. P. 26(c) .....................................................................................23, 25

Fed. R. App. P. 26.1 .............................................................................................. i

Fed. R. App. P. 32(a)(7)(B) ................................................................................27

# INTRODUCTION

In 1998, now-President Donald J. Trump ("President Trump"), two of his companies The Trump Organization, Inc. and Trump-Equitable Fifth Avenue Company (collectively, the "Trump Parties") and others resolved a lawsuit concerning pension contributions allegedly due to a labor union (the "Union") that supplied workers as part of the demolition of the building on the site of what is now Trump Tower in Manhattan.  After years of litigation and appeals, the parties resolved their dispute before the District Court on the record.  As part of their settlement, the Parties requested that the District Court seal the record of the settlement conference proceedings.  The District Court consented to this request, and thereafter, sealed its order, which it subsequently amended, memorializing the settlement.

Last year, during his campaign for President of the United States, various media organizations, including Appellants, began an endless assault to uncover information concerning each and every one of President Trump's prior business dealings.  In furtherance of such efforts, on July 12, 2016, Appellants moved before the District Court seeking an order to unseal the settlement in this case alleging, among other things, that a presumption of access to the settlement exists under both the common law and the First Amendment.  A28-A30.

By Order, dated August 26, 2016 (the "Order"), however, the Honorable

Thomas P. Griesa, the same judge who presided over the sealing of the settlement, denied the request, holding that Appellants "fail[ed] to provide specific facts that establish extraordinary circumstances or a compelling need to unseal the documents[,]" at issue.  A41-42, Order at 1-2.

Despite this well-reasoned decision, Appellants now ask that this Court reverse the decision of the District Court on the grounds that the settlement documents in question were improperly sealed under a "good cause" standard rather than under common law or First Amendment standards.

As will be explained below, neither the First Amendment nor common law right of access applies here.  Even if it did, it is without question that the confidential nature of the settlement was a material consideration for the Trump Parties to resolve this matter and was relied upon by the Trump Parties.  This countervailing interest outweighs any right of access.  Finally, the District Court did not err in its original determination that good cause existed at the time of sealing the documents.

Accordingly, the Order of the District Court denying Appellants' motion to unseal the settlements documents in this case should be affirmed in its entirety.

2

## COUNTERSTATEMENT OF ISSUES PRESENTED FOR REVIEW

1.  Did the District Court correctly deny Appellants' application to unseal confidential settlement documents?

2.  Did the District Court act within its discretion when it originally sealed the settlement documents at issue in this case?

## COUNTERSTATEMENT OF THE CASE

This action, commenced in 1983, arose as a result of grievances concerning the alleged failure to pay pension contributions to the Union in connection with the demolition work on the site of what became Trump Tower in Manhattan.

On October 26, 1998, the parties appeared before the District Court to memorialize the terms of the parties' settlement, on the record. As part of the settlement, the parties agreed that the terms and amount of the settlement would be kept confidential and requested that the proceedings regarding the settlement be sealed. During this proceeding, the District Court informed the parties that it would issue an order memorializing the terms of the settlement. On December 29, 1998, the District Court entered an order memorializing the settlement. Thereafter, on February 9, 1999, the District Court amended its original settlement order to account for, among other things, its decision to grant plaintiffs' application dispensing with the notice requirements under Rule 23(e) and 23.1 of the Federal

3

Rules of Civil Procedure (the settlement proceedings transcript, the December 29, 1998 order and the February 9, 1999 order collectively referred to as the "Settlement Documents").

In June 2015, President Trump announced that he would be running for the Office of President of the United States. From that moment forward, various media outlets began their attempts to unseal a number of confidential settlements entered into by President Trump and his businesses.

In this regard, on July 12, 2016, over seventeen years after the last activity in this case, Appellants moved the District Court for an order to unseal the Settlement Documents. A28-A30. Appellants alleged, among other things, that there was a presumption of access to the Settlement Documents under both the common law and the First Amendment. *Id.* In addition, Appellants argued that the District Court improperly sealed the Settlement Documents under a "good cause" standard when the parties resolved this action in 1998. *Id.*

The Trump Parties responded to Appellants' request by letter, dated August 12, 2016, arguing, among other things, that there was no presumption of access to the sealed Settlement Documents given the fact that the parties to the case had a strong interest in maintaining the confidential nature of the settlement. A34-A35. Appellants served their reply letter brief on August 22, 2016. A36-A38.

4

On August 26, 2016, the District Court, after having weighed "the public's right to access court documents against the interest in facilitating settlement in complex cases" held that it had good cause back in 1998 "to grant the parties' joint request to seal settlement related documents in this matter" and finding "that the balance favored confidentiality." A41, Order at 1. Furthermore, the District Court held that Appellants "fail[ed] to provide specific facts that establish extraordinary circumstances or a compelling need to unseal the [settlement] documents" or "that the sealing was improvidently granted in the first instance." A42, Order at 2.

To that end, the Trump Parties submit this brief in opposition to the Appeal of the Order. As will be discussed below, the presumption of access to the Settlement Documents does not apply, under either the common law or First Amendment. Moreover, President Trump was not a public official when this action was settled and the decision of the District Court to seal the Settlement Documents was correctly based on the circumstances at the time the parties settled this case in 1998. Lastly, it was entirely appropriate for the District Court, in its sound discretion, to seal the Settlement Documents upon its finding of "good cause."

Appellants' brief (the "Moving Br.") provides virtually no support for their position that a confidential and sealed settlement in a case involving private

parties, and made nearly twenty years ago, should be unsealed. Appellants' brief consists mostly of theoretical positions and almost entirely inapposite case law.

Therefore, the Order of the District Court should be affirmed in its entirety.

## SUMMARY OF ARGUMENT

1.      The District Court correctly ruled that the First Amendment and common law rights of access did not apply to support the unsealing of the Settlement Documents.

2.      President Trump's current position as a public official, a position he did not hold at the time the Settlement Documents were originally sealed, does not provide a heightened interest to support the unsealing of the Settlement Documents.

3.      The District Court acted within its discretion when it applied the "good cause" standard in sealing the Settlement Documents.

## ARGUMENT

### THE DISTRICT COURT'S DECISION TO
### SEAL THE SETTLEMENT DOCUMENTS IN 1998 WAS PROPER

### I.      There Is No Presumptive
### Right Of Access To The Settlement Documents

Generally, "to have confidence in the administration of justice," there is a presumption of public access to court records. *Lugosch v. Pyramid Co. of*

6

*Onondaga,* 435 F.3d 110, 119 (2d Cir. 2006) (quoting *United States v. Amodeo,* 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*").  The presumption, however, is not absolute.  *United States v. Amodeo*, 44 F.3d 141, 146 (2d Cir. 1995) (*"Amodeo I"*); *see also Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978) (holding that "[e]very court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes.").

 "The 'presumption of access' to judicial documents is secured by two independent sources: the First Amendment and the common law." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016). Here, there is no presumptive right of access to the Settlement Documents under either the First Amendment or the common law.

### a.    There Is No Presumptive Right Of Access Under The First Amendment

To determine whether the First Amendment presumption attaches to a particular judicial document, the Court evaluates whether "experience and logic" support making that type of document available to the public.  *United States v. Erie County, N.Y.,* 763 F.3d 235, 329 (2d Cir. 2014) ("*Erie County*").  This inquiry requires the Court to consider: (i) whether such documents "have historically been

open to the press and general public," and (ii) whether "public access plays a significant positive role in the functioning of the particular process in question." *Id.* (quoting *Lugosch*, 435 F.3d at 120); *see also In re N.Y. Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 409 (2d Cir. 2009) (presumption applies to documents that have "historically been open to the press and general public" (experience) and for which "public access plays a significant positive role in the functioning of the particular process in question" (logic).).

It is well established that settlement proceedings and documents, like those at issue here, have not historically been open to the press and general public. *See In re Franklin Nat. Bank Sec. Litig.*, 92 F.R.D. 468, 472 (E.D.N.Y. 1981), *aff'd sub nom. F.D.I.C. v. Ernst & Ernst*, 677 F.2d 230 (2d Cir. 1982) ("[s]ecrecy of settlement terms…is a well-established American litigation practice"). In addition, this Circuit "strongly endorses the confidentiality of settlement agreements in virtually all cases." *Schoeps v. Museum of Modern Art,* 603 F. Supp. 2d 673, 676 (S.D.N.Y. 2009) (citing *United States v. Glens Falls Newspapers, Inc.,* 160 F.3d 853, 857 (2d Cir. 1998) ("*Glens Falls*"); *see also Palmieri v. State of N.Y.,* 779 F.2d 861, 864 (2d Cir. 1985) (noting "need of our district courts and civil litigants to facilitate efficient resolution of disputes through negotiated settlements").

8

It also cannot credibly be argued that public access plays a significant positive role in the functioning of the settlement process. To the contrary, public access is detrimental to such process. *See, e.g., Glens Falls,* 160 F.3d at 858 ("Few cases would ever be settled if the press or public were in attendance at a settlement conference or privy to settlement proposals.").

Accordingly, applying the experience and logic test, the Settlement Documents, arising out of a settlement conference, are not subject to the First Amendment right of access. *United States v. Town of Moreau, N.Y.*, 979 F. Supp. 129, 136 (N.D.N.Y. 1997), *aff'd sub nom. Glens Falls*, 160 F.3d at 853 (First Amendment right to access not implicated where party sought access to settlement negotiations, because access to settlement communications have never "been traditionally open to the public.").

Although Appellants argue that the sealed Settlement Documents have a presumptive right of access under the First Amendment, they fail to cite any case that holds that such a right exists in the factual context present here.

**b.    There Is No Presumptive
    Right Of Access Under The Common Law**

Under the common law, the court determines the "weight" of the presumption of access to a judicial document by evaluating "the role of the

9

material at issue in the exercise of Article III judicial power" and "the resultant value of such information to those monitoring the federal courts." *Bernstein*, 814 F.3d at 142. When a document's role in the performance of Article III duties is "negligible," the weight of the presumption is low. *Id*. (quoting *Amodeo II*, 71 F.3d at 1050).

After determining the weight of the presumption, the Court balances the value of public disclosure against countervailing factors, such as "the privacy interests of those resisting disclosure." *Id*. at 143. Under this balancing test, the court shall deny public access if competing considerations against public disclosure outweigh the presumption of access. *Erie County*, 763 F.3d at 239.

Public access to settlement discussions and documents would "impair materially the trial court's performance of its Article III function of crafting a settlement." *Glens Falls*, 160 F.3d at 858. Additionally, there is very limited value to the release of such information. The Settlement Documents contain information pertaining to a private settlement, entered almost twenty years ago. The privacy interests of the Trump Parties, who negotiated and conditioned the settlement on the confidentiality of the Settlement Documents and maintained such confidentiality for almost twenty years, is high. *Bernstein*, 814 F.3d at 143; *Amodeo II,* 71 F.3d at 1050; *see also LEAP Systems, Inc. v. MoneyTrax, Inc.,* 638

10

F.3d 216, 221-22 (3d Cir. 2011); *cf. City of Hartford v. Chase*, 942 F.2d 130, 136 (2d Cir. 1991) (affirming lower court's decision to seal settlement related-documents finding that a court "has the power to prevent access to settlement negotiations when necessary to encourage the amicable resolution of dispute" where "confidentiality was a prerequisite to the parties' decision to settle their dispute").

Accordingly, applying the common law balancing test, the interests of the Trump Parties in maintaining the confidentiality of the Settlement Documents far outweighs any negligible presumption of access. *See, e.g., Glens Falls*, 160 F. 3d at 858 ("The need for a fair and efficient resolution through settlement of this complex, expensive, ten-year-old case of great public importance far outweighs the negligible presumption of access to settlement materials.").

Appellants argue that the Settlement Documents at issue should be unsealed since "they consist[ed] of final settlement terms" and because the settlement was "ultimately approved by the [D]istrict [C]ourt." Moving Br. at 17-18. Appellants go on to suggest that these actions by District Court are a direct exercise of its "Article III judicial power." Moving Br. at 18.

However, Appellants have not provided any legal basis to support this argument. Indeed, their reliance on *Glens Falls*, *Gambale v. Deutsche Bank AG*,

11

377 F.3d 133 (2d Cir. 2004) and *In re Sept. 11 Litig.*, 723 F. Supp. 2d 526 (S.D.N.Y. 2010) for the proposition that the right of access attaches once a settlement document is filed with the court does not square with the facts and circumstances here.

In *Glens Falls*, this Court affirmed the lower court's finding that there was no presumption of access to settlement conference statements in litigation commenced by the Environmental Protection Agency arising from pollution found in a town water supply. *Id.*, 160 F.3d. at 853. The proposed settlement in *Glens Falls* was to result in a consent decree which would be continuously monitored and enforced by the trial court overseeing the case. This continued monitoring and enforcement would demonstrate the court's Article III power, and therefore, give way to a presumption of access under those circumstances. Here, however, once the settlement of this case occurred and the terms and conditions of the settlement were satisfied shortly thereafter, no other court intervention was required. In fact, once the Settlement Documents were entered and sealed, no other activity in this case took place until Appellants moved to unseal the Settlement Documents in July 2016, over seventeen years later.

Similarly, *Gambale* is also inapposite. In that case, the parties had executed a confidential settlement agreement, and thereafter, appeared before the trial court

12

requesting continued court monitoring to hear any future disputes over enforcement of their settlement agreement. *Id.*, 377 F.3d. at 136. The parties then appeared at a hearing before the trial court and disclosed the confidential settlement amount at the request of the judge overseeing the case. The informal discussion of the confidential settlement amount somehow made its way into a transcript which was publicly-filed with the Clerk of the Court. *Id.* at 143, n. 4. This Court found that a presumption of access, although weak, attached to this transcript. *Id.* at 143.

Here, unlike in *Gambale*, great care was taken to maintain the confidential nature of the settlement in this case. As discussed herein, the parties in this action requested at the October 26, 1998 settlement conference that the confidential settlement between them be sealed and the District Court consented to this request. To that end, in denying Appellants' motion to unseal the Settlement Documents, the District Court "weigh[ed] the public's right to access court documents against the interest in facilitating settlement….[and] found that the balance favored confidentiality. A41, Order at 1. This clearly demonstrates that the District Court went out of its way not only to protect the parties' desire to maintain the confidential nature of the settlement but to do so in the most limited and narrow

13

fashion possible so as to avoid the Settlement Documents being subject to a presumption of access.

Lastly, Appellants' reliance on *In re Sept. 11 Litig*. is also without merit. In that case, which involved property damage claims asserted by businesses in Manhattan as a result of the terrorist attacks of September 11, 2001, the trial court held that the presumption of access was raised as a result of it having to conduct extensive proceedings after approving the settlement in *In re Sept. 11 Litig*., specifically, noting that it was required to consider how the settlement proceeds would be allocated and distributed. *Id.* at 531. Contrary to what occurred in *In re Sept. 11 Litig*., and as discussed above, once the District Court entered and sealed the Settlement Documents and the parties fulfilled their settlement obligations, no other court intervention was required in this case (until Appellants' brought their motion to unseal last summer) and therefore, no right of access attached to the Settlement Documents.

Adopting Appellants' arguments here would defeat the purpose of sealing orders creating uncertainty and ultimately inhibiting parties from settling. Parties to litigation must be able to rely on the fact that documents sealed by a court will remain sealed. As discussed above, the certainty of confidentiality of the settlement in this case was relied upon by the Trump Parties at the time it entered

14

into the settlement. Appellants have presented no basis justifying the unsealing requested here.

### c. Even If There Was A Right Of Access Under Either The First Amendment Or Common Law, The Settlement Documents Should Still Remain Sealed

Even if Appellants could establish that they have a First Amendment right of access, which they do not, the presumption of access "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter. Co. v. Superior Court of California for Riverside Cty.*, 478 U.S. 1, 9-10 (1986). Additionally, even if a common law right of access existed, which it does not, "[t]he common-law presumption of access can be overcome if a sufficiently compelling countervailing interest is demonstrated." *United States v. King*, No. 10 CR 122 JGK, 2012 WL 2196674, at *2 (S.D.N.Y. June 15, 2012) (citing *Lugosch*, 435 F.3d at 120).

In denying Appellants' motion to unseal, the District Court "weigh[ed] the public's right to access court documents against the interest in facilitating settlement….[and] found that the balance favored confidentiality." (A41, Order at 1). Here, the "higher values" and the "sufficiently compelling countervailing interest" considered by the District Court was the preservation of the confidential nature of the parties' settlement after over fifteen years of litigating this case. The

15

parties' understanding and reliance on the fact that the settlement would not be made public, and sealed by the District Court, is a crucial fact that outweighs the public's right to access. *See, e.g., LEAP Systems, Inc.,* 638 F.3d at 222 ("we find LEAP's reliance on the District Court's assurances of confidentiality entirely reasonable and sufficient to outweigh the public's common law right of access."); *Gambale,* 377 F.3d at 144 (settlement information disclosed during "a relatively informal conference" and made based on the court's "assurances of confidentiality" created only a "weak" presumption of access). In addition, the District Court narrowly-tailored its objectives of facilitating settlement of this matter by limited sealing solely to the Settlement Documents and no other case records. *Press-Enter. Co.*, 478 U.S. at 9-10.

Accordingly, the District Court correctly found that any First Amendment or common law right of access was outweighed under the circumstances presented here.

## II.   The Settlement Here Is Not A Class Settlement Presumptively Open To Public Access

In another attempt to argue for a right to access the Settlement Documents, Appellants take the position that Fed. R. Civ. P. 23(e) ("Rule 23(e)"), which sets forth the procedure for a court to approve a class settlement, provides a basis for

"the public to assess whether the district court's approval…complied with Rule 23(e)." Moving Br. 18-19. There is absolutely no basis whatsoever for this position.

Rule 23(e) lays out the procedures required for a court to approve a class action settlement. As discussed above, the District Court, being fully aware of the class action nature of this case, accepted the parties' joint request to seal the settlement. Even the class plaintiffs' *own counsel* consented to sealing, as well as a waiver of the standard notice requirements under Rule 23(e) which, in effect, removed this settlement from the general category of court-approved settlements.

The limited case law offered by Appellants on this point is clearly distinguishable. In *Geltzer v. Andersen Worldwide, S.C.*, 2007 WL 273526 (S.D.N.Y. Jan. 30, 2007), the District Court denied a request to seal a class action settlement in connection with an adversary proceeding brought by a bankruptcy trustee. Unlike the parties here, the bankruptcy proceeding in *Geltzer* involved numerous creditors, all of whom had an interest in the result of the subject bankruptcy. The court in *Geltzer* expressly held that the plaintiff-trustee was not acting for "his…own personal interest, but on behalf of others," thereby necessitating a heighted presumption of access. *Id.* at *1. Here, the class plaintiffs, numbering two in total at the time this case was settled, had some

17

interest in the settlement, but the Union itself was the beneficiary. Furthermore, as discussed above, the Rule 23(e) notice requirements in this action were dispensed with by the District Court, thereby removing this case from the typical category of court-approved settlements. Based upon these unquestionable distinctions, *Geltzer* is inapplicable here.

Appellants additionally rely upon *In re Sept. 11 Litig.*, 723 F. Supp. 2d at 532 to support their argument as to the need to publicly disclose a class action settlement, but again, that case involved an entirely different class of plaintiffs and drastically contrasting circumstances which, unlike the dispute here, required a heighted presumption of access given the cause of plaintiffs' property damage claims in that case, the terrorist attacks of September 11, 2001.

## III. There Is No Heightened Interest In The Settlement Documents As President Trump Was Not A Public Official When This Matter Was Settled And The Issues In The Case Merely Involved Private Business Activities

Appellants argue that there is a strong presumption of access "in cases where the judicial documents sought 'show[] the actions of public officials.'" Moving Br. at 13. This argument is entirely baseless since President Trump was a private citizen up and until the time he was sworn into office on January 20, 2017.

As discussed above, at the time it originally sealed the Settlement

18

Documents, the District Court conducted the proper balancing tests in support of sealing the Settlement Documents as it found that the need to help facilitate resolving this long and complex case warranted confidential treatment of the settlement at issue. *Supra* pp. 5, 13. Without question, it would have been inconceivable at the time for the District Court to predict that any of the individual parties in this case would one day hold public office.

The Settlement Documents in this action have remained sealed for nearly two decades and were never challenged. Indeed, the sealed nature of the Settlement Documents only became an issue during last year's election cycle.

While Appellants are looking at the issue of unsealing in hindsight given President Trump's current position, the proper analysis is for this Court to look at whether it was proper at the time the parties came before the District Court requesting that their settlement be sealed (in 1998) and not after there has been a change in circumstances. Appellants, a non-party to this case, cannot now reach back in time and argue that sealing the class settlement in 1998 was somehow inappropriate.

Not surprisingly, the case law cited by Appellants is inapplicable and unpersuasive as they all involve some government actor as a party. Both *In re National Broadcasting Company, Inc.*, 635 F.2d 945 (2d Cir. 1980) ("*Myers*") and

19

*United States v. Beckham*, 789 F.2d 401 (6th Cir. 1986) involved media requests

for materials entered into evidence during criminal proceedings involving the

conduct of elected public officials who were alleged to have committed criminal

acts while in office. *Myers*, 635 F.2d at 952; *Beckham*, 789 F.2d at 413. *See also*

*United States v. Criden,* 648 F.2d 814, 822 (3d Cir. 1981) (reversing the trial

court's decision to seal evidentiary materials arising from the same criminal

proceeding at issue in *Myers*); *In re NBC, Inc.,* 653 F.2d 609, 614 (D.C. Cir. 1981)

(same).

This Court in *Myers* held:

> that there is a presumption in favor of *public inspection and*
> *copying of any item entered into evidence at a public session of*
> *a trial*…...The presumption is especially strong…*where the*
> *evidence shows the actions of public officials*…[and] there
> remains a legitimate and important interest in affording
> members of the public their own opportunity to see and hear
> *evidence that records the activities of a Member of Congress*
> *and local elected officials*…[a]nd there is a significant public
> interest in affording that opportunity contemporaneously with
> the introduction of the tapes into evidence in the courtroom,
> when public attention is alerted to the ongoing trial.

*Id.* at 952. (emphasis added).

No set of facts in this matter come close to the issues presented before this

Court in *Myers*. As opposed to the media's request in *Myers*, which was done

contemporaneously with the underlying criminal proceedings in that case, here, the

20

Settlement Documents sought by Appellants arose from a civil dispute between private parties which was resolved nearly two decades ago.

Equally unavailing is Appellants' reliance on *Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014) ("*Public Citizen*"). In *Public Citizen*, consumer groups sought access to, among other things, a sealed summary judgment decision and a report authorized by the United States Consumer Product Safety Commission (the "Commission") arising from an action brought against the Commission by a private company seeking to halt the Commission from publishing a report accusing the company of manufacturing a product which allegedly caused the death of an infant. *Id.* at 252-53. The Fourth Circuit in *Public Citizen* held that disclosure of the sealed materials in question was appropriate "in litigation *against the government*." *Id.* at 271. (emphasis added).

Here, there was a litigation between private entities and individuals where no government bodies were party to this case in any way whatsoever. To that end, the additional authority cited by Appellants on this point are also of no value. *EEOC v. Erection Co., Inc.*, 900 F.2d 168, 172 (9th Cir. 1990) (reversing an order sealing a consent decree issued by Equal Employment Opportunity Commission); *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) (affirming the lower court's decision to unseal financial documents of a defendant in an action

21

brought by a government agency).

Finally, Appellants' reliance upon *Romero v. Drummond Co., Inc.*, 480 F.3d 1234 (11th Cir. 2007), is misplaced. In *Romero*, the Eleventh Circuit reversed the lower court's order sealing non-dispositive case documents which contained information concerning the intelligence actions of foreign governments, as well as alleged communications between the defendant in that case and the United States Department of State. *Id.* at 1246. Here, it has not been nor has it ever been alleged that any of the defendants in this action were in contact with government parties pertaining to the underlying dispute here.

Therefore, since President Trump was not a public official at any time during the pendency and settlement of this case and since no government bodies were party to this matter at any point in time, Appellants arguments fail.

## IV. The District Court Appropriately Acted In Its Sound Discretion When It Found Good Cause To Seal The Settlement Documents

Notwithstanding the issues surrounding the right of access, the District Court, acting within its sound discretion, properly sealed the Settlement Documents under a good cause standard. *Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 738 (2d Cir. 2000); *Hasbrouck v. BankAmerica Hous. Servs.*, 187 F.R.D. 453, 462 (N.D.N.Y. 1999), *aff'd sub nom. Hasbrouck v. BankAmerica Hous.*

22

*Servs., Inc.*, 190 F.R.D. 42 (N.D.N.Y. 1999); *United States v. Longueuil*, 567 F.

App'x 13, 15 (2d Cir. 2014); *Schoeps,* 603 F. Supp. 2d at 676.

Courts have applied the "good cause" standard under Rule 26(c) of the

Federal Rules of Civil Procedure ("Rule 26(c)") to protect the confidentiality of

information contained in a settlement between parties. *Hasbrouck*, 187 F.R.D. at

462. A district court's decision to seal records is committed to its sound discretion

based on the relevant facts and circumstances of the particular case. *Longueuil*,

567 F. App'x at 15 (*citing Nixon*, 435 U.S. at 599); *see also Geller*, 212 F.3d at

738 (holding that a district court "enjoys considerable discretion in determining

whether good cause exists to overcome the presumption of open access" to court-

filed documents).

Based on the facts and circumstances surrounding the confidential nature of

the settlement of this action, the District Court acted appropriately within its sound

discretion when it decided to seal the Settlement Documents.

At the time it granted the parties' joint request to seal the Settlement

Documents, the District Court was fully aware that because of the long and

contentious nature of this case, and the fact that the Trump Parties agreed to settle

this matter after fighting plaintiffs' claims for years, it was necessary to provide an

extra level of protection to guarantee the confidential nature of the parties'

23

settlement, in this instance, sealing the Settlement Documents.

As this Court has held, "[w]here there has been reasonable reliance by a party or deponent," a sealing order or similar protective measure should not be modified "absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need." *S.E.C. v. TheStreet.com,* 273 F.3d 222, 229 (2d Cir. 2001) (quoting *Martindell v. Lit'l Tel. & Tel. Corp.,* 594 F.2d 291, 296 (2d Cir. 1979)).

It is undisputed that the Trump Parties relied upon the confidential nature of the settlement as a material consideration for their decision to settle this matter. *See IIT v. Int'l Controls Corp.*, No. 76 CIV. 1547 (CES), 2009 WL 3094942, at *1 (S.D.N.Y. Sept. 28, 2009) (citing *City of Hartford v. Chase,* 942 F.2d 130, 136 (2d Cir. 1991) (concluding that decision to seal settlement documents was not improper because "a judicial assurance of confidentiality was a prerequisite to the parties' decision to settle their dispute"). Without the assurances that the settlement here would be kept confidential, there was a strong likelihood that the parties would have proceeded to trial thereby potentially delaying resolution of the case for years.

Appellants have not put forth any substantive arguments which would suggest that the District Court abused its discretion by applying a good cause

24

analysis when it sealed the Settlement Documents in 1998. Most significantly, they have failed to show any extraordinary circumstances or compelling need to unseal the Settlement Documents. *TheStreet.com,* 273 F.3d at 229; *Martindell,* 594 F.2d at 296.

The cases cited by Appellants on this point are both legally and factually inapplicable. *Brown v. Advantage En'g. Inc.*, 960 F.2d 1013 (11th Cir. 1992) concerned the reversal of an order sealing entire case record, whereby the appeals court held that the district court abused its discretion. *Id*.; Moving Br. at 21. Contrary to the circumstances in *Brown*, the District Court here sealed a specifically-limited and narrow portion of the record in this case, namely the Settlement Documents at issue here.

In sum, the sealed nature of the confidential settlement here was an express condition in this instance for the Trump Parties to settle and these facts and circumstances provided the good cause necessary under Rule 26(c) for the District Court to seal the Settlement Documents.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Appellants' appeal in all respects and affirm the Order in its entirety.

Dated:      New York, New York
February 10, 2017

THE TRUMP ORGANIZATION

By:   /s/ Matthew R. Maron
Matthew R. Maron
725 Fifth Avenue
New York, New York 10022
(212) 715-7200
mmaron@trumporg.com

Lawrence S. Rosen
LAROCCA HORNIK ROSEN
GREENBERG & BLAHA LLP
40 Wall Street, 32nd Floor
New York, New York 10005
(212) 530-4822
lrosen@lhrgb.com

*Attorney for Defendants-Cross-Defendants-Cross-Claimants-Appellees Trump-Equitable Fifth Avenue Company, Trump Organization and Donald J. Trump, dba The Trump Organization*

26

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32(a)(7)(C) of the Fed. R. App. P., I, Matthew R. Maron,

an attorney of record for Defendants-Cross-Defendants-Cross-Claimants-Appellees

Trump-Equitable Fifth Avenue Company, Trump Organization and Donald J.

Trump, dba The Trump Organization, hereby certify that this appeal brief complies

with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B). In

reliance on the word processing software used to prepare this brief, I certify that

the total number of words in the brief, not including the table of contents, table of

authorities and any certificates of counsel is 5,474.

Dated:  New York, New York
    February 10, 2017

         THE TRUMP ORGANIZATION

        By:  /s/ Matthew R. Maron
          Matthew R. Maron
        725 Fifth Avenue
        New York, New York 10022
        (212) 715-7200
        mmaron@trumporg.com

        *Attorney for Defendants-Cross-*
        *Defendants-Cross-Claimants-*
        *Appellees Trump-Equitable Fifth*
        *Avenue Company, Trump*
        *Organization and Donald J. Trump,*
        *dba The Trump Organization*

27